**ALLIED PETRO-PRODUCTS, INCOR-PORATED, formerly Allied Petroleum Corp.**

v.

**MARYLAND CASUALTY COMPANY.**

Civ. A. No. 30180.

United States District Court
E. D. Pennsylvania.

Dec. 22, 1961.

David S. Malis, of Malis, Malis & Malis, Philadelphia, Pa., for plaintiff.

William T. Campbell, Jr., of Swartz, Campbell & Henry, Philadelphia, Pa., for defendant.

JOSEPH S. LORD, III, District Judge.

This case is before us on the defendant's motion to transfer the action to the Southern District of Florida under Title

28 U.S.C.A. § 1404(a). We have the benefit of an affidavit on behalf of the defendant and a counter-affidavit and supplemental affidavit on behalf of the plaintiff. From these affidavits and from the pleadings it appears that the suit is one to recover on a Blanket Position Bond indemnifying the plaintiff against loss by reason of fraud or dishonesty of, or theft by its employes.

The plaintiff's main, if not only, office is located at 1445 City Line Avenue, Montgomery County, Pennsylvania, in this District, but the plaintiff's plant at which the defalcations occurred is in Jacksonville. Most, if not all, of the defalcating employes are residents of the Jacksonville area. The plaintiff's officers, bookkeeper, accountants, investigators and books are all in the Philadelphia area. It further appears that the defalcating employes are necessary witnesses, eleven of whom will be produced by the plaintiff at trial.

Plaintiff's supplemental affidavit sets forth in some detail the cost to it of trial in Florida, totalling $8,153.85, part of which is an estimation of increased counsel fee. This total includes the transportation and maintenance expenses of eleven persons, the same number as plaintiff states will be produced here from Florida. However, from an examination of plaintiff's two affidavits most, if not all, of the eleven persons going to Florida will be required to stay for the entire duration of the trial, whereas those coming here would not. In any event, the cost to plaintiff of trial in Florida over and above the cost in Philadelphia varies between $3,800. and $6,800., not counting increased counsel fee.

Defendant's position is this: The loss, if any, was occasioned by the dishonest acts of plaintiff's employes. If plaintiff recovers from defendant, then defendant would be entitled to recover from the employes by virtue of its subrogation rights. Its sole reason for seeking removal to Florida is to permit it to join the defalcating employes as third-party defendants. Thus, says defendant, its rights will be better preserved and a multiplicity of suits will be avoided.

There are persuasive and appealing arguments on both sides.

For the defendant, it can certainly be said that the ability to implead a third party is an important consideration. Fein et al. v. Public Service Co-ordinated Transport, 1958, D.C.E.D. Pa., C.A. No. 23658, 165 F.Supp. 370, Kirkpatrick, J. It seems clear that at least as to loss caused by identifiable employes,[1] the proof required to sustain this plaintiff's burden would be identical to the proof which the defendant would be compelled to advance in a separate action against the employes to recover for its loss. In other words, if the plaintiff is successful in this action the defendant would automatically be entitled to a judgment against the identifiable employes if they were joined as third-party defendants. However, if they were not so joined, another jury in Florida in a separate suit against the employes might, on the same proof, find against the bonding company, for the case here between this plaintiff and this defendant alone would not be *res judicata* as to the employes.

In Caldwell Manufacturing Co. v. Unique Balance Co., 1955, S.D.N.Y., 18 F.R.D. 258, at page 267, the Court said:

"* * * The bisecting of what is essentially a single controversy will be obviated by remitting the

[1]. Section 4 of the Bond provides: "If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss the Insured shall nevertheless have the benefits of this Bond, subject to the provisions of Section 2 of this Bond, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the Underwriter for any such loss shall not exceed the amount stated in Item 3 of the Declarations."

parties to the Western District. There, the validity of the patent and the issue of infringement will be litigated in one lawsuit; all of the interested parties will be before the court; its judgment will be *res judicata*; and its jurisdiction is unquestioned. * * * "

However, the ability to implead is not the only factor to be considered. Indeed, in Fein, supra, where the case was transferred from Philadelphia to Camden to permit a third-party joinder, Judge Kirkpatrick said:

" * * * The plaintiff has cited a number of cases in which somewhat similar applications for transfer were denied. In each of them, although the matter of bringing in a third party defendant was one of the factors, the question of comparative convenience of the two forums was the controlling consideration.

"In the case at bar, the question of comparative convenience is non-existent. The Camden courthouse is not over half an hour's ride from the Philadelphia courthouse.

" * * * there is nothing whatever by way of convenience of the parties to outweigh that consideration. * * * "

■ Here, there is not only substantial inconvenience, but substantial expense involved from plaintiff's standpoint. In addition, unlike a negligence case, plaintiff has paid in premiums for the protection it now seeks. Its right to this protection is, of course, resisted and defendant now says, in effect, not only that it contests plaintiff's claim, but that it wants to do it at increased expense to plaintiff and away from plaintiff's choice of forum. An unconditional transfer, we think, would not be fair and that which is not fair is not in the interest of justice.

In Hokanson v. Helene Curtis Industries, Inc., 1959, S.D.N.Y., 177 F.Supp. 701, at page 703, speaking of a motion to transfer, the Court said:

" * * * Two factors persuade me that the granting of the defendant's motion unconditionally would not be in the interest of justice. The first is the financial condition of the plaintiff. Her affidavit shows that she is a self-supporting person of modest income who has incurred expenses of over $3,600 in connection with her alleged injury. She has already employed attorneys in Nebraska and in New York to prosecute her claim. If defendant's motion is granted, plaintiff will have to employ additional attorneys to represent her in Illinois.

" * * * Justice requires that if the defendant's request be granted, it be on fair terms. * * * "

The court granted defendant's motion upon condition, inter alia, that defendant pay the fees of plaintiff's New York counsel.

What we have said indicates the substantial merits of both plaintiff's and defendant's positions. We think defendant should have the opportunity to implead, but not at plaintiff's expense. Therefore, defendant's motion will be granted but only on condition that (1) defendant make satisfactory arrangements for the payment to plaintiff of the amount by which the cost of trial in Florida will exceed the cost of trial here;[2] (2) the clerk of this court shall not transfer the file to the Southern District of Florida until plaintiff's attorneys certify in writing to the clerk that there has been compliance with (1) above; otherwise defendant's motion is denied.

So ordered.

2. If the parties cannot agree on the amount or method of payment, this court will take proof thereon and determine the same. See Hokanson v. Helene Curtis Industries, Inc., supra.